## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ERNEST M. DRUPALS,

                Plaintiff,

  v.

PAUL MABEY, ANTHONY LUPINACCI,
DEBBIE JENEY, KENNETH R. CUSTER,
and REUBEN F. BRADFORD,

             Defendants.

Civil Action No.
3:13-CV-00404 (CSH)

**JULY  23, 2014**

### RULING ON MOTION BY DEFENDANT KENNETH R. CUSTER
### TO DISMISS THE COMPLAINT

**HAIGHT**, Senior District Judge:

This is a Federal civil rights action to which Connecticut state law and common law claims are appended under principles of supplemental jurisdiction.

The gravamen of Plaintiff Ernest M. Drupals's complaint [Doc. 1] is that he was falsely arrested, maliciously prosecuted, and denied procedural and substantive due process in Connecticut by Connecticut local and state law enforcement officers and other Connecticut local and state officials, with the involvement of a police officer from a county in Maryland.  All these individuals are named as Defendants in the action.  The case is now before the Court on the motion of the Maryland police officer to dismiss the complaint as to him, based on this Court's lack of personal jurisdiction over him, and the failure of the substantive charges against him to state a claim.  *See* Doc. 25.

For the reasons that follow, the Court grants this Defendant's [Doc. 25] motion to dismiss the complaint for lack of personal jurisdiction.  The Court does not reach the merits of Plaintiff's

federal and state law claims against him.   The complaint will be dismissed as to the moving Defendant without prejudice.

## I.  BACKGROUND

While some of the underlying events giving rise to this controversy are in dispute, the following facts appear from the record to be undisputed.

In 2002, Plaintiff Ernest Drupals was convicted in a Connecticut court on a sex offense charge.  In consequence, Drupals was required by Connecticut General Statute § 54-251(a) to register in that State as a convicted sex offender.  Drupals did so, specifying a residence address of 80 Palmer Street, Stamford, Connecticut.

According to Drupals's account, he resided at the Palmer Street, Stamford address until the fall of 2007, when he moved to Maryland to live with his brother.  On various days in January 2008, Drupals was in the process of moving from his residence in Connecticut to Maryland.  There may be some dispute on that score, but it is common ground that on January 4, 2008, Drupals appeared at a police station in Anne Arundel County, Maryland, and registered as a sex offender, giving a residence address of 2012 Harbor Gates Drive, Apartment 244, Annapolis, Maryland.

That registration came to the attention of Defendant Kenneth R. Custer, a corporal in the Anne Arundel County Police Department.  Corporal Custer undertook to visit the Harbor Gates apartment for the purpose of conducting what the Police Department refers to as "a face-to-face verification of Plaintiff's address."  Brief for Custer [Doc. 25-1] at 2.

Precisely what happened thereafter is disputed.  But it is undisputed that Custer, dissatisfied with efforts to locate Drupals at the Harbor Gates address, applied for a warrant to arrest Drupals

on Maryland failure-to-register charges.  The Maryland authorities did not press that charge.  Custer also telephoned Debbie Jeney, a Connecticut state trooper concerned with sex offender registration and a Defendant in this action.  Drupals alleges in his complaint that this call occurred on January 10, 2008.  In any event, it appears to be undisputed that Custer told Jeney that Drupals was not residing at the Harbor Gates address in Annapolis that Drupals had given in person to the Anne Arundel police when he registered in Maryland, and by mail to Trooper Jeney during the course of his moving from Connecticut to Maryland.

Custer's advice to Jeney resulted in certain Connecticut Defendants preparing a warrant to arrest Drupals on charges of violating the Connecticut registration statute.  Defendants Paul Mabey and Anthony Lupinacci, Stamford police officers, executed that warrant on January 30, 2008, Drupals having moved back to Connecticut from Maryland earlier that month.  In September and October 2009, Drupals was tried on the Connecticut charges before the Connecticut Superior Court. The Connecticut prosecutors subpoenaed Custer as a witness.  In obedience to that subpoena, Custer testified at the trial.  Drupals was convicted and sentenced to a term of imprisonment.  On appeal, his conviction was vacated and the case remanded to the trial court.  *State v. Drupals*, 306 Conn. 149 (2012).[1]  The State decided not to retry Drupals.  Thereafter, Drupals brought this action.

The present motion is concerned only with Defendant Custer, a corporal of the Anne Arundel County, Maryland police department.  The foregoing is a concise but comprehensive description of

---

[1] The Connecticut Supreme Court disagreed with the State's interpretation of the Connecticut sex-offender registration laws, and held there was insufficient evidence to convict Drupals of violating those laws as properly read.  The Supreme Court concluded its opinion by saying: "Although we reverse the defendant's conviction regarding count one and remand the case for further proceedings to give the state an opportunity to retry the defendant, we question whether, given these facts, the defendant could be found guilty." *Drupals*, 306 Conn. at 172.  The State got the message. Drupals was not retried.

what Custer *did* in connection with Drupals's situation.  To recapitulate: Custer conducted a police inquiry into whether Drupals resided at the Anapolis address Drupals had given the Anne Arundel police, concluded that Drupals did not reside at that address, notified the Connecticut state police of that conclusion, and testified at Drupals's Connecticut trial on Connecticut registration charges. I do not discern any dispute with respect to those facts.

What is in dispute is Custer's intent and purpose in doing what he indisputably did with respect to Plaintiff Ernest Drupals.  The case turns not so much upon what Custer did, but why he did it.  Plaintiff's theory of the case appears to be that the defendant Connecticut officers and officials formed an agreement to persecute Drupals unjustly, and that Custer knowingly and willingly joined in that agreement and contributed to its success.  Typical allegations appear in ¶ 49 of the Complaint: "Custer communicated and coordinated his false arrest [warrant] with defendants Jeney, Mabey and Lupinacci, who in turn were manufacturing charges against plaintiff in Connecticut." [Doc. 1]. Plaintiff's complaint describes this perceived collective wrongdoing at length.  With equal vigor, Custer denies any wrongdoing on his part.  The case for Custer is that in Maryland he performed the routine duties of a police officer, and in Connecticut he testified at Drupals's trial because he was subpoenaed to do so.

On the present motion, the Court does not reach the merits of Plaintiff's claims against Defendant Custer.  The question is whether this Court has personal jurisdiction over Custer in respect of those claims.  If Custer's person is not subject to the jurisdiction of this Court, then as a matter of law Custer is simply not here and it would be inappropriate for the Court to say anything about Plaintiff's claims against him.  I turn to the existence *vel non* of the Court's personal jurisdiction over Custer.

4

## II.   DISCUSSION

In *LucidRisk, LLC v. Ogden*, 615 F.Supp.2d 1 (D.Conn. 2009), District Judge Droney (as he then was) held in a commercial case brought by a Connecticut company that this court had no personal jurisdiction over defendants who were residents of California and New Jersey.   Judge Droney began his analysis by saying:

> On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing that the court has jurisdiction over the defendant.   When the parties have conducted jurisdictional discovery but no evidentiary hearing has been held, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.

*Id*. at 4 (citations, internal quotation marks and brackets omitted).

As demonstrated *infra*, in the case at bar jurisdictional discovery has been conducted with respect to the defendant Custer but no evidentiary hearing has been held.   Implicit in Judge Droney's quoted analysis is the proposition that no evidentiary hearing is necessary if a complaint's well-pleaded factual allegations and the fruits of jurisdictional discovery do not combine to make a prima facie showing that this Court has jurisdiction over Custer in respect of the claims Drupals alleges against him.

It is readily apparent that the allegations of the complaint fail to make that  showing.[2]   In order for Plaintiff Drupals, a Connecticut citizen, to establish jurisdiction over Defendant Custer, a local Maryland county police officer, Plaintiff must perforce rely upon Connecticut's long-arm

_____

[2]   In this Ruling, I give consideration only to the well-pleaded factual allegations in the complaint.   Argumentative or conclusory allegations are disregarded.   On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

statute, Conn. Gen. Stat. § 52-59b(a).  Plaintiff asserts federal civil rights claims under 42 U.S.C.

§§ 1983 and 1988.  Before a court may exercise personal jurisdiction over  defendant, there "must

be a basis for the defendant's amenability to service of summons."  *Omni Capital Int'l, Ltd. v. Rudolf*

*Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  In cases involving an out-of-state defendant, a federal

court "normally looks either to a federal statute or to the long-arm statute of the State in which it sits

to determine whether a defendant is amenable to service, a prerequisite to its exercise of personal

jurisdiction." *Id*. at 105 (footnote omitted).  Since the federal civil rights statute upon which Plaintiff

bases his claims contains no provisions in respect of service of process, Plaintiff turns to the long-

arm-statute of Connecticut, that being the State in which this Court sits.

Plaintiff's principal jurisdictional theory, as expressed in his brief, is that Custer falls within

§§ 52-59b(a) and (a)(1), which provide that "a court may exercise personal jurisdiction over any

nonresident individual" who "Transacts any business within the state."  The argument in the brief

runs in this fashion:

> Custer transacted business within Connecticut in his numerous
> communications with the three Connecticut police defendants, Jeney,
> Mabey and Lupinacci. . . . Custer coordinated and assisted in both the
> falsified Connecticut arrest warrant and the Connecticut defendants
> coordinated and assisted him in his falsified Maryland arrest warrant.
> . . . . Custer traveled from Maryland to Connecticut to testify against
> the plaintiff in the criminal trial.  His testimony was an integral part
> of the state's case. . . . Custer testified against Plaintiff in his capacity
> as a law enforcement officer.  Custer's business is law enforcement.
> Therefore, when Custer testified against Plaintiff, he was transacting
> business which falls within the criteria of the Connecticut long-arm
> statute that allows federal courts jurisdiction over an individual who
> 'transacts *any* business within the state. . . . Further, Custer did
> voluntarily traveled [*sic*] to Connecticut to testify against plaintiff in
> the criminal court.  Custer should have reasonably anticipated being
> called to court in Connecticut because he had done so once already in
> relation to the matter that is in part the subject of this lawsuit.

Brief for Plaintiff [Doc. 40] at 8-10. Alternatively, Plaintiff contends that Custer "committed a tortious act against plaintiff when he traveled up from Maryland to testify against Plaintiff in Connecticut court about his 'investigation' and the warrant falsely obtained in Maryland." *Id*. at 9. This contention is an invocation of subsection (a)(2) of the long-arm statute, which applies to a nonresident who "commits a tortious act within the state."

Drupals's claims against Corporal Custer of the Anne Arundel County, Maryland police department do not fall within the Connecticut long-arm statute. As Judge Droney observed in *LucidRisk*, 615 F.Supp.2d at 5: "The term 'transacts business' is not broadly interpreted in Connecticut." (citation and internal quotation marks omitted). It would require the broadest interpretation imaginable to conclude that Custer's conduct, as alleged in the complaint, constituted the transaction by him of business in Connecticut within the meaning and intent of the long-arm statute.

Custer was a member of a police department responsible for the public safety. Police departments do not engage in private commercial transactions for profit. Plaintiff's brief says that "Custer's business is law enforcement," so "[t]herefore, when Custer testified against Plaintiff, he was transacting business" within Connecticut [Doc. 40] at 9. The assertion that "law enforcement" is the sort of business whose transactions fall within the long-arm statute is counsel's *ipse dixit*. He cites no case holding that an out-of-state police force or its officers acting in the line of duty could be regarded as transacting business within the forum state under a long-arm-statute such as Connecticut's.

The absence of such authority is easy enough to understand. It is fanciful to suppose that the Connecticut Legislature intended by the long-arm statute to extend Connecticut courts' personal

7

jurisdiction over law enforcement officers in the other 49 states whose official acts discomfited Connecticut citizens who happened to be passing through.  That is not a perfect analogy to the Plaintiff's allegations in the case at bar, but it is a fair *reductio ad absurdum* of Plaintiff's concept that "law enforcement is business," and demonstrates the fallacy of the concept.  A contrary conclusion creates a Pandora's Box that, it is reasonable to think, the Legislature would have decided not to open had it thought of doing so (there is no evidence the thought crossed the legislative mind).

Even if one accepts, contrary to the Court's conclusion just stated, that under certain circumstances an out-of-state police officer's conduct may constitute the transaction of business or a tortious act in Connecticut for purposes of the long-arm statute, Drupals's factual allegations against Custer do not suffice to lay the grounds for personal jurisdiction.  As we have seen, Plaintiff's brief makes much of Custer's traveling from Maryland to Connecticut to testify at Drupals's criminal trial.  Counsel, it would seem, wrote that brief under the impression Custer made the trip and trial appearance voluntarily, which allowed the complaint and brief to characterize Custer's trip and testimony as acts in furtherance of his alleged conspiracy with Connecticut police officers to accuse Drupals falsely.  However, it was shown during the briefing on this motion (as counsel for Drupals could surely have ascertained with minimal inquiry) that Custer was subpoenaed by State prosecutors to testify at Drupals's Connecticut criminal trial.  Custer's trip and his testimony were compelled, not voluntary.  They are irrelevant to long-arm statute analysis.

So we are left with the complaint's allegations about Custer's police activities in Maryland with respect to Drupals's asserted Annapolis residence, and the communications Custer undoubtedly had with Connecticut authorities on that subject, by telephone, e-mail, or regular mail.  These acts, by themselves or collectively, do not amount to the transaction by Custer of business in Connecticut.

8

In *LucidRisk* Judge Droney, after observing that the term "transacts business" is "not broadly interpreted in Connecticut," went on to illustrate that proposition with references to cases:

> For example, the negotiation of contracts, standing alone, does not constitute "transacting business" in Connecticut. Similarly, the transmission of communications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transaction of business in a forum state.

615 F.Supp.2d at 5 (citations omitted).  Cases such as these militate against an interpretation of Connecticut's long-arm statute sufficiently broad to ensnare Corporal Custer.

To be sure, the  complaint alleges that Custer's conduct in Maryland with respect to Drupals was wrongful and malicious.  However, Drupals cannot successfully invoke that provision in the long-arm statute that confers jurisdiction upon a nonresident individual who "commits a tortious act outside the state causing injury to a person or property within the state."  Conn. Gen. Stat. § 52-59b(a)(3).  That provision applies only if the individual involved "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," subsection (a)(3)(A), or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce," subsection (a)(3)(B).  Custer satisfies none of these qualifying criteria.

In these circumstances, it is clear that Plaintiff's complaint does not sufficiently allege the Court's personal jurisdiction over Custer.  I recognize that a Scheduling Order dated December 13, 2013 [Doc. 47] recited that

> the Court has determined that limited pretrial discovery is in order, and ought to be conducted, solely with respect to the question of this Court's personal jurisdiction over Defendant Custer. Such limited

9

> pretrial discovery will commence immediately and conclude on or
> before Friday, February 14, 2014, shortly after which the Court will
> convene an evidentiary hearing on the issue, the date and time of
> which are to be determined.

In recent submissions, counsel for Plaintiff state that the limited jurisdictional discovery directed by the Order has been completed. Counsel also accurately observe that an evidentiary jurisdictional hearing has not been scheduled. Given the governing law discussed in this Ruling, the prior order for an evidentiary hearing was premature and improvidently made, since there was not at that time a discernible reason to hold a hearing. Nothing in the complaint required one.

In consequence, Custer's motion to dismiss the complaint as to him for lack of personal jurisdiction will be granted, subject to the following directions. Until this moment Plaintiff had every reason to expect that there would be a hearing, at which the fruits of his jurisdictional discovery could be displayed and witnesses called to testify. Fairness requires that if Plaintiff desires to press his claims against Custer in this action, he be given greater latitude than are allowed by the rules for reargument of adverse court decisions. Plaintiff may move to vacate this Ruling dismissing his claims against Custer. That motion, if made, must be accompanied by:

1. The docketing and inclusion in the Court file of all evidence obtained during the discovery which counsel says has been completed.

2. A list of the witnesses Plaintiff would call or expect to testify at a jurisdictional evidentiary hearing, together with a detailed description, in the form of an offer of proof, reciting with respect to each witness the testimony Plaintiff would expect to elicit.

3. A list of the exhibits to be produced at the hearing.

Plaintiff may include with these submissions a further brief on the law. The purpose of these

submissions, if made, is to determine whether there is a present or potential basis for vacating the Ruling made today, which dismisses the complaint against Custer for lack of personal jurisdiction.[3]

If Plaintiff decides to press the case against Custer, these additional submissions must be filed not later than August 8, 2014.  Counsel for Custer may file responsive papers by August 22, 2014.

## III.  CONCLUSION

For the foregoing reasons, the Court resolves certain pending motions in this case as follows:

1.  The motion [Doc. 25] of Defendant Kenneth R. Custer to dismiss the complaint as to him for lack of personal jurisdiction is GRANTED, and the complaint is DISMISSED AS TO THAT DEFENDANT, WITHOUT PREJUDICE.  The Court does not reach the other bases for dismissal in Custer's motion, which go to the merits of the claims against him.

2.  Plaintiff, if so advised, may move to vacate the Ruling contained in Paragraph 1 by filing further submissions consistent with this Ruling.

3.  Plaintiff's motions [Doc. 49] and [Doc. 51] for scheduling conferences are DENIED AS MOOT.

4.  The prior Scheduling Order in the case [Doc. 48] is modified so as to provide that the time of June 2, 2014 for completing all discovery, including depositions of expert witnesses, is extended *nunc pro tunc* for four months from that date, to and including October 2, 2014.  All other dates in that Scheduling Order are enlarged accordingly.

---

[3] It is worth noting that the dismissal of Plaintiff's complaint against Custer does not insulate Custer from giving deposition or trial testimony in this case, under subpoena if necessary, as a witness to relevant facts.

5. Plaintiff's motion [Doc. 50] to modify the Scheduling Order is DENIED AS MOOT.

6.  All prior Orders staying any aspect of this litigation are VACATED.

All of the foregoing is SO ORDERED.

Dated:  New Haven, Connecticut
          July 23, 2014




                              /s/Charles S. Haight, Jr.
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge

12